C. D. Freeman *v.* Dayton Scale Co.

*(Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

414

Thos. G. Watkins, for plaintiff in error.

Manier & Crouch, and Andrew Ewing, for defendant in error.

Mr. Justice Chambliss, delivered the opinion of the Court.

This is a suit for libel. A demurrer to the declaration was sustained and plaintiff has appealed. It appears from the declaration, and a letter made Exhibit thereto, in the course of which the libelous matter appears, that plaintiff had formerly been an employee of defendant and had brought suit, represented by Thomas G. Watkins, Esq., as his Attorney, for a balance alleged to be due plaintiff; that plaintiff's said Attorney had written defendant setting out the claim of his client and that the letter containing the libelous matter was a part of the correspondence passing between an agent of the defendant corporation and the attorney for plaintiff touching this disputed matter. The demurrer raised the question of publication on the theory that the declaration fails to show communication of the libelous matter, except to the attorney for plaintiff in a letter explaining the claims of defendant in response to the demands of plaintiff made through said attorney as his agent and representative.

Counsel for plaintiff say, first, that publication arises when libelous matter is communicated in a letter written to and opened and read by an attorney of the libeled party; and, second, publication arises whenever libelous matter is dictated to a stenographer and transcribed and mailed; and that dictation to a stenographer sufficiently appears from the fact that the letter, filed with the decla-

416

ration as an exhibit, shows on the left hand corner of the last page "C-K."

■ This being a civil and not a criminal suit for libel it is essential that there be publication, that is, a communication of the defamatory matter to a third person. This is so for the reason that the gravamen of the act is the pecuniary damage to the character or credit of the party libeled. No such damage can arise, of course, without publication. The authorities are in conflict as to whether or not such publication takes place when the communication takes the form of a letter written to the attorney representing the party libeled, standing instead of and acting for the party himself, in response to a demand, and in the course of and connected with an explanatory reply. The weight of the more recent authorities, supported we think by reason, is against liability in such a case, upon the ground both that such a communication is privileged, and also that there is no publication in the required sense.

■ This view seems to rest partly on the theory that the attorney is the chosen agent of the party libeled, selected by him to stand in his stead and to receive on his behalf any such communication as may pass between the parties to the controversy; and partly on the theory that a communication addressed to a third party, procured to be so addressed by the party libeled, does not amount to a publication. An illustration of the class of cases holding to this latter view is our case of *Kansas City M. & B. R. Co.* v. *DeLaney,* 102 Tenn., 289; 45 L. R. A., 600; 52 S. W. 151, holding that the delivery of a letter of recommendation, which proved to contain matter alleged to be libelous, of a former employee to a person who, by his authority, requested it, is not a publishing of any libel contained in it.

In *Dickinson* v. *Hathaway,* 122 La. 644, 48 So. 136, 21 L. R. A. (N. S.), 33, dealing with correspondence with attorneys for the plaintiff, among other things, the Court said: "We have gone a step further and considered the relation of attorneys to their client. They represented the plaintiff. Instead of writing himself, he left it to his attorneys. The answer to the attorneys related exclusively to their demand. It was the same as if the letter had been addressed to the plaintiff. It was, therefore privileged."

In *Wells* v. *Bellstrat Hotel Corporation,* 206 N. Y. Supp., 625, the Appellate Division of the Supreme Court of New York, finding that the alleged libelous letter was written in answer to a request from the attorney for the plaintiff, approved the holding in *Dickinson* v. *Hathaway, supra,* and held that a letter written to the attorney of the plaintiff was not libelous, because the same was not published, that a private letter, answering plaintiff's attorney, and relating to a matter in which the parties were concerned, would not support an action for damages for libel. This holding was followed in the case of *Shinzler* v. *Vuyk,* 213 N. Y. Supp., 135.

In 17 R. C. L., 320, it is said to be "generally held that the publication of a libel or slander invited or procured by the plaintiff is not sufficient to support an action for defamation," and in the same section it is said that a private letter written by a person charged with libel and addressed directly to the attorneys of the plaintiff in regard to a claim asserted by the latter against the writer and placed in the hands of the plaintiff's attorney for adjustment has not been published, in the sense of the law of libel.

418

We are of opinion that this view is sound on principle. The confidential relationship in which an attorney stands to his client is well recognized. The essence of publication being the giving out to the public of the matter, it would seem clear that when one goes no further than to communicate the matter to the confidential attorney of another, he has not been guilty of doing that which might reasonably be expected to give the matter circulation.

It is to be observed that in some of the cases the distinction between publication and privilege is not always preserved. The explanation suggested is that the same considerations that control the conclusion on the one question will determine the decision of the other.

But counsel next rely for publication on the dictation of the letter to a stenographer. The declaration no where contains a charge that this letter was dictated to a stenographer, and it may well be doubted that the pleadings would sustain such a theory in view of this omission. Counsel rely in argument, as already stated, upon the appearance of the letters "C-K" in the left hand corner of the last page of the letter. The Court should not be left to a bare inference as to the significance of these letters. Conceding that they are sufficient to raise a presumption of probative value, there is a lack of allegation in the declaration as a foundation for such proof. It is the rule that "every material fact which constitutes the ground of plaintiff's action must be alleged in his declaration." 31 Cyc., 100. In the instant case no cause of action is stated unless publication be alleged in manner and form. A demurrer never admits mere inferences from traversable facts. 6 Ency. P. & P., 336. And even if the declaration had attempted to charge that the letters appended had the meaning claimed for them in argu-

ment, the rule is that, "averments, in a declaration as to the meaning and interpretation of a writing attached thereto, or exhibited, are not admitted by a demurrer." *Crockett* v. *McLanahan,* 109 Tenn., at page 525.

However, conceding that the question is before us on the pleadings, while the authorities are not harmonious, we find that the weight of authority is that the dictation of a letter containing libelous matter to a stenographer does not constitute publication in the sense of the law of libel. And here again the distinctions between questions of publication and privilege are not kept clear. Where the matter is conditionally privileged, probably true here, the effect is only to shift the burden of showing malice, but lack of publication is an absolute defense. A comparatively late case of *Globe Fur. Co.* v. *Wright,* 49 App., 50 D. C., 315, 265 Fed., 873, is published and annotated fully in 18 A. L. R., 772. That case follows and approves *Cartwright-Caps Co.* v. *Fischel,* 113 Miss., 359, L. R. A., 1918F, 566, and is a well reasoned opinion denying a right of recovery for libel where the letter had been dictated to a stenographer and not otherwise published. In the note beginning on page 778 the Annotator says that, "the more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that, where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel." Many authorities are cited, emphasis being placed in some of the cases upon the co-operative and joint nature of the act of two agents of one corporate entity, as inconsistent with a publication, or giving out to a third person, when one agent of the corporation dictates to another agent of the same corporation. *Central of Ga. R. Co.* v. *Jones,* 18

Ga. App., 414, 89 S. E., 429; *Owen* v. *Ogilvie Pub. Co.*, 53 N. Y. Supp., 1033, 18 A. L. R. note, 776. In 36 C. J., Sec. 174, p. 1225, it is announced that communication between officers and agents of a corporation, or dictation to a stenographer in the corporation's employ by an officer or agent thereof, is not publication of libelous matter. The foregoing cases are cited, and also *Prins* v. *Holland-North American Mortg. Co.*, 107 Wash., 206, 181 P. 680, 5 A. L. R., 451, the latter case being directly in point. The cases *contra* chiefly relied on by counsel for Freeman are *Brown* v. *Elm City Lumber Co.*, 107 N. C., 9, 82 S. E., 961, 1915-E, L. R. A. 275, and *Alabama & V. Ry.* v. *Brooks*, 69 Miss., 168, 30 Am. State Rep., 517. In the latter case, while in concluding its opinion the Court says that "the publication was complete when the libelous letter was received and read by Dabney & McCable, the plaintiff's attorneys," it is apparent that the defense made and overruled was alleged privilege, rather than lack of publication. The question of publication, as a distinct issue, was not before the Court. And in the North Carolina case, while the Court said "we are inclined to disagree with his Honor in the ruling that the sending of the letter to the attorneys of the plaintiff was not a publication," the point was not decided, the case going off on other issues. The Court merely follows its expression above quoted with a reference to *Dickinson* v. *Hathaway, supra,* and *Ala. & V. Ry.* v. *Brooks, supra,* as holding contrary views.

We are satisfied that the sounder and better supported rules are, first, that communications made to a libeled party's attorneys, corresponding for him regarding the specific matter in connection with which the libelous matter is used, are not thereby given publication; and, second, that the incidental dictation of such a communication

to an employee stenographer is not a publication of the libelous matter.

In the first case the libelous matter, if circulated at all to the damage of the libeled party, must be given out by his agent standing in his stead; and, in the second case, the stenographer, if a co-employee in a corporation, has no distinct third party entity, and if an employee of an individual, is a confidential instrumentality only of the libelant, not recognized, when engaged in the performance of this mainly mechanical duty, as possessing an independent third party personality. And, as a practical proposition, it should be said, to the credit of those engaged in this calling, that experience demonstrates that their loyalty and fidelity is universally such that communications confided to them are not disclosed.

The judgment is affirmed.