GRACIE LEE ROBINSON, appellant, v. HOME FIRE & MARINE INSURANCE COMPANY, appellee.

No. 47876.

(Reported in 49 N.W.2d 521)

1122

OctoBer 16, 1951.

- Oliver, Glanton & Dixon, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

Wennerstrum, J.—Plaintiff's action is based on a claim for alleged slander. In her petition she states that she was defamed by reason of oral statements made by an attorney representing the defendant in a conference with a prospective witness in a case then pending in the District Court of Polk County, Iowa, in which case the plaintiff in the present case was the plaintiff and the defendant herein was the defendant. In a separate division

of the petition plaintiff claims that a representative of an adjustment company, who it is claimed was the agent for the defendant, also made slanderous statements concerning the plaintiff to the attorney representing the plaintiff at a time when he was negotiating a settlement of a claim upon a fire loss by reason of a policy of insurance issued by the defendant. The defendant filed a motion to dismiss the two divisions of plaintiff's petition heretofore referred to. It was sustained by the trial court and the plaintiff has appealed.

The appellant alleged in Division IV of an amendment to her petition that on or about the 20th day of March, 1950, an attorney representing the appellee in the action brought on the fire insurance policy interviewed one Clifton Davis, and in his presence and in the presence of other parties unknown to the appellant, made the following statement: "Clifton, you are still going to testify that Gracie Lee Robinson set the fire that damaged the house and burned up her husband aren't you? You know that Gracie Lee Robinson did set the fire and burned up her husband, and I am sure you want to tell the jury about the same." It is alleged that said statement was false and defamatory and was uttered and understood as a charge of arson and murder and was for the express purpose of injuring the plaintiff.

It was further alleged in a separate division, Division V, of appellant's amended petition that on or about the 26th day of November, 1949, an attorney representing her had an interview with a representative of an adjustment company, who, it is claimed, was the agent of the appellee company. In this interview, which was before any proceedings were filed in court on the part of the appellant by reason of her claimed fire loss and the policy of insurance, it is alleged that the adjustment company representative stated: "I don't believe we can pay a claim on a fire that has been set. Gracie Lee Robinson set this fire that burned up her house and caused the damage to the property, and we don't intend to pay for a fire that she has purposely set." It is alleged that these statements were false and defamatory and were uttered and understood as a charge of arson and murder and were for the express purpose of injuring the plaintiff. It is further asserted in this division of appellant's petition that this last referred to statement was made in the office of the adjustment com-

pany to the appellant's attorney while he was attempting to negotiate a settlement of the claim based on the policy of insurance covering the property of the appellant that had been damaged by fire.

The appellee filed a motion to dismiss the two divisions of appellant's amendment to petition herein referred to. Relative to the one first mentioned, it is alleged that the appellant's petition affirmatively shows that the language and communication in question were privileged and were material and relevant to an action then pending in the Polk County District Court; that the words spoken by appellee's counsel, when interviewing a witness in an action then pending, were absolutely privileged and cannot be made the basis of an action for defamation; and that no publication of the defamatory words in question was charged which could give rise to an action against the appellee.

In a second division in the appellee's motion to dismiss, it is alleged that the petition affirmatively shows that the words in question spoken by the adjustment company's representative of the appellee to appellant's attorney were made in the course of negotiations in which the attorney was attempting to procure a settlement on behalf of his client under a policy of insurance which the appellant had; that this matter was confidential and privileged and no publication of the same is alleged which could give rise to an action for defamation by the appellant against this appellee; that the communication made to the appellant's attorney was while he was acting in a confidential and fiduciary capacity; that if there was any actionable publication of the defamatory words charged, such publication must have been made by the appellant's attorney and the appellee is not bound thereby or in any way responsible for his actions. It is also claimed that the communication complained of was invited by appellant's counsel who had gone to the office of the adjustment company for the purpose of negotiating a settlement of the claim of the appellant against the appellee and that her attorney thereby invited the communication complained of and the same is privileged and was not published by the appellee in such a manner as to give rise to the action for defamation by the appellant against the appellee.

Subsequent to the filing of the motion to dismiss, appellant's

counsel filed a resistance to it. It was therein contended that the statements made by the appellee's attorney and referred to in one of the divisions of the appellant's petition were not privileged, as it is shown that the statements were made out of court. It is further alleged in a separate paragraph of the resistance that the statements made by the representative of the adjustment company to the appellant's attorney are not privileged and the attorney claims no privilege by reason of the conversation with the adjustment company's representative of the appellee. It is also claimed that the matters referred to in the appellant's petition were not confidential and were not made to the appellant's counsel in a fiduciary capacity.

Thereafter, as previously stated, the trial court sustained the motion to dismiss the two divisions in question.

I. Privileged defamatory matters are divided into two general classes: (1) those that are absolutely privileged, and (2) those which are qualifiedly or conditionally privileged. 33 Am. Jur., section 124, page 123; 53 C. J. S., section 87, page 141; Nichols v. Eaton, 110 Iowa 509, 511, 81 N.W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319; Laun v. Union Electric Co., 350 Mo. 572, 166 S.W.2d 1065, 144 A. L. R. 622, 626. When absolute privilege exists it affords a complete defense. 3 Restatement of the Law, Torts, page 219; 33 Am. Jur., section 125, page 123; 53 C. J. S., section 87, page 142; Nichols v. Eaton, supra. Even the existence of express malice does not destroy an absolute privilege. Ryan v. Wilson, 231 Iowa 33, 52, 300 N.W. 707, 712; Stafney v. Standard Oil Co., 71 N. D. 170, 299 N.W. 582, 588, 136 A. L. R. 535, 542.

II. It has also been held that the occasion when an alleged slanderous or libelous statement is made may afford an absolute privilege. 53 C. J. S., sections 87(c), 88, pages 142, 143; 33 Am. Jur., section 125, page 123; Ryan v. Wilson, 231 Iowa 33, 44, 300 N.W. 707, 712. A privileged occasion is one on which a privileged person is entitled to do something which no one not within the privilege is entitled to do on that occasion. 53 C. J. S., section 87(c), pages 142, 143. Privileged occasions are likewise "* * * divided into two classes by the text writers: Those known as 'absolutely privileged' and those 'conditionally privileged.' Words spoken upon an occasion 'absolutely privileged', though spoken falsely, knowingly and with express malice, impose no

liability for damages in an action for slander or libel, while, on the other hand, words spoken upon an occasion only 'conditionally privileged' impose such liability if spoken maliciously or not in good faith; the difference between the two being that in the former case the freedom from liability is absolute and without condition, while in the latter case it is made to depend upon the absence of express malice." Sebree v. Thompson, 126 Ky. 223, 226, 103 S.W. 374, 375, 11 L. R. A., N. S., 723, 724, 15 Ann. Cas. 770.

"The circumstances are the occasion upon which the language is used and it is the occasion which is privileged. Odgers, Libel & Slander, p. 227; Townshend, Slander & Libel, Sec. 209, p. 297; 9 Col. L. R. 468." Laun v. Union Electric Co., 350 Mo. 572, 579, 166 S.W.2d 1065, 1069, 144 A. L. R. 622, 627.

■ The court has the initial responsibility of determining whether the occasion upon which a party published a claimed defamatory matter was privileged. This responsibility on the part of the court exists regardless whether the issues involve the existence of an absolutely privileged occasion or one that is only conditionally privileged. 3 Restatement of the Law, Torts, section 619, page 310; Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 10 L. R. A., N. S., 1051, 1054, 10 Ann. Cas. 1148; Children v. Shinn, 168 Iowa 531, 549, 150 N.W. 864.

■ III. A matter that is reasonably pertinent to the issues is absolutely privileged whether contained in pleadings, affidavits, statements made by witnesses to counsel before a trial, or made in open court. Harper on Torts (1933) Defamation, section 248, pages 530, 531; Prosser on Torts (1941) Defamation, Privilege, pages 824, 827. The question whether the matter stated is relevant is for the determination of the court and not for the jury. Bussewitz v. Wisconsin Teachers Assn., 188 Wis. 121, 205 N.W. 808, 810, 42 A. L. R. 873; Pacific Employers Ins. Co. v. Adams, 196 Okla. 597, 168 P.2d 105, 107; Inselberg v. Trosty, 190 Misc. 507, 77 N. Y. S.2d 457, 459; Andrews v. Gardiner, 224 N. Y. 440, 121 N.E. 341, 2 A. L. R. 1371, 1374.

■ IV. A privileged communication is one made by a person who has an interest in the subject matter to one who also has an interest in it or stands in such a relation that it is a reasonable

duty or a proper one for the person to make the statement. 53 C. J. S., section 87(b), page 140. The question of absolute privilege as pertains to the duty of a person in making a statement has been applied to members of the legislature, judges of courts, jurors, lawyers, and witnesses. 33 Am. Jur., section 125, page 124.

██ In Restatement of the Law of Torts, section 586, page 229, it is stated:

"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto."

In the comments following this section it is stated that the absolute privilege of an attorney is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients, and it is further stated:

"It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth or even his knowledge of its falsity. These matters are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer. The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary thereto."

And concerning the defense of absolute privilege it is also stated in the comment concerning this matter in 3 Restatement of the Law of Torts, page 224, that it is "* * * based upon a policy which regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others."

The statements heretofore set forth find support in the authorities. In 70 C. J., section 580(26), page 431, it is stated:

1128

"The preliminary examination by a solicitor of a witness who may or may not be in a position to be a witness on behalf of his client in contemplated proceedings is within the same privilege as that which the witness would have if he had said the same thing in his sworn testimony in court."

This statement from the text is supported by the English (Court of Appeals) case of Beresford v. White (1914) 58 Sol. J. 670. It was therein stated:

"The interview between Mr. Smith and Mrs. White was an interview between the solicitor of the plaintiff and a person who was or who was thought to be in a position to give some evidence in these contemplated proceedings. It was a professional interview with a person who might be a witness in litigation then in contemplation, and therefore under the authorities the statement was privileged."

In 9 Columbia Law Review 463, 487, 488, 489, in an article written by Judge Van Vechten Veeder and entitled "Absolute Immunity in Defamation", it is stated: "The rule applies to and includes every publication which constitutes a step in, or arises out of, a judicial proceeding, or which has some relation thereto, whether such proceeding be *ex parte* or *inter partes*, in open court or in private, or of a preliminary, interlocutory or final character." The foregoing statement is supported by a further English case: Watson v. M'Ewan (1905) A. C. 480, 489, where the House of Lords held that the preliminary examination of a witness by a solicitor was absolutely protected. See also Zirn v. Cullom, 187 Misc. 241, 63 N. Y. S.2d 439, 440.

In the case of Youmans v. Smith, 153 N. Y. 214, 222, 47 N.E. 265, 267, it was held that where an attorney in a legal proceedings then pending prepared a list of questions to be asked witnesses which might, under certain situations, be competent and material, and caused these questions to be printed for submission to the witnesses in preparation for the hearing, such questions, even though they contained matters defamatory of the party to whom they referred, were privileged in the hands of such counsel and his agent, while used solely for the purpose for which they were prepared. It was therein stated:

"He had the right, by personal interviews, to ask the various persons, who were expected to be witnesses in favor of either side upon the question of character, how they would answer the questions under consideration, or to send an agent to make the same inquiry, with a copy of the list as a memorandum. While we do not commend the practice, we cannot say that it is unlawful."

In the case of Speenburgh v. Schwartz (1937) (Supreme Court, Delaware County), 165 Misc. 508, 300 N. Y. S. 196, it was held that a statement made by an attorney in a brief filed in a judicial proceeding was privileged.

In the case of Craig v. Burris (1902) (Superior Court of Delaware), 4 Pennewill's Reports 156, 161, 55 A. 353, 354, the statement of facts discloses that the claimed slanderous statements were made by an attorney representing a prosecuting witness and outside of a Justice of the Peace office and in conversation with the defendant in a criminal action. The court, in its opinion, stated:

"Taking the utterances which are claimed to be libelous, and giving to them their most extended meaning connected with the circumstances, they do not appear to us as being outside of his privilege as an attorney. The evidence distinctly negatives express malice."

Other cases pertaining to the question of absolute privilege and of a somewhat similar nature to the instant case under consideration are: Beggs v. McCrea, 62 App. Div. 39, 70 N. Y. S. 864, 867; Schmitt v. Mann, 291 Ky. 80, 163 S.W.2d 281, 284; Roberts v. Pratt, 174 Misc. 585, 21 N. Y. S.2d 545, 549.

V. Although the situation presented in the instant case does not pertain to pleadings filed in a judicial proceedings, it is well to keep in mind that this court has previously held that libelous matters published in connection with pleadings filed in a judicial procedure were absolutely privileged and would not support an action for defamation, although made maliciously and with knowledge of their falsity, provided, however, that the language used in the pleading is pertinent and relevant to the issues therein involved. Mass v. Meire, 37 Iowa 97, 98; Hess v. McKee, 150 Iowa 409, 410, 130 N.W. 375; Anderson v. Hartley, 222 Iowa

921, 923, 270 N.W. 460, 461. In the case of Anderson v. Hartley, supra, this court made the following statement:

"Although defamatory words, used against another generally, subject the person uttering them to an action for libel or slander, exceptions to this rule apply where the alleged defamatory language is contained in a pleading in another judicial proceeding, and where the language used is pertinent and relevant to the issues made therein. These exceptions are based upon sound public policy, and are adopted because it would be a discouragement to litigants, and defeat justice, if they were to be subjected to prosecutions for allegations contained in pleadings filed therein. In such cases it is well settled that statements made by a party in the pleadings in such action are absolutely privileged and can give rise to no action for defamation. [Citing cases.]"

The basis for the rule in the citation just quoted has equal application to a situation where an attorney is conferring with a prospective witness. To hold an attorney or witness liable for statements made in a preliminary conference would discourage him from conferring about proposed testimony relative to an action then pending or contemplated, and thus tend to defeat the ends of justice.

VI. We have heretofore discussed the circumstances under which there would be absolute privilege to an attorney representing a client. In this connection it should be kept in mind that appellant's action is brought against the attorney's client, and it is claimed that the attorney was acting as agent for the appellee. The protection which is afforded an attorney under a plea of privilege equally applies to the client he represents. In the case of People ex rel. Bensky v. Warden of City Prison (1932) 258 N. Y. 55, 60, 179 N.E. 257, 259, it is stated:

"If a publication is privileged as to counsel, it is privileged as to his client and the converse is true. Youmans v. Smith, supra, 153 N. Y. 214, at page 219, 47 N.E. 265; Andrews v. Gardiner, 224 N. Y. 440, 446, 121 N.E. 341, 2 A. L. R. 1371."

In an opinion written by Cardozo, J., then a member of the New York Court of Appeals, it is stated in Andrews v. Gardi-

ner, supra, at page 446 of 224 N. Y., page 343 of 121 N.E., page 1374 of 2 A. L. R.:

"There is no difference in respect of degree between the privilege of counsel and that of parties and witnesses. They are phases of the same immunity. Munster v. Lamb, L. R. 11 Q. B. Div. 588, 52 L. J. Q. B. N. S. 726, 49 L. T. N. S. 252, 32 Week. Rep. 248, 47 J. P. 805, 7 Eng. Rul. Cas. 714; Revis v. Smith, 18 C. B. 126, 139 Eng. Reprint, 1314, 25 L. J. C. P. N. S. 195, 2 Jur. N. S. 614, 4 Week. Rep. 506, Garr v. Selden, 4 N. Y. 91; Kemper v. Fort, supra, at page 89 of 219 Pa., 13 L. R. A. (N. S.) 820, 123 Am. St. Rep. 623, 67 Atl. 991, 12 Ann. Cas. 1022; Laing v. Mitten, 185 Mass. 233, 235, 70 N.E. 128. 'Neither party, witness, counsel, jury, nor judge, can be put to answer, civilly or criminally, for words spoken in office.' Lord Mansfield in Rex v. Skinner, Lofft, 55, 98 Eng. Reprint, 529."

 VII. "A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty * * *. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." 33 Am. Jur., section 126, pages 124, 125.

It has also been held that where a communication has been made in good faith by a person who deems it his duty to do so, whether legal or moral, it is qualifiedly privileged and is actionable only on proof of actual malice. Kroger Grocery & Baking Co. v. Yount, 8 Cir., Mo., 66 F.2d 700, 702, 92 A. L. R. 1166, 1170.

Although we are concerned in the instant case with the question whether a motion to dismiss certain divisions of appellant's petition should have been sustained, we believe the statement made in Montgomery Ward & Co. v. Watson, 4 Cir., W. Va., 55 F.2d 184, 188, is here applicable:

 "Where the language is of such a character that the jury would be justified in inferring malice from its use, the question of

the existence of malice is, of course, one for their determination; but, where such inference cannot reasonably be drawn, or where the language and the circumstances attending its publication are as consistent with the nonexistence of malice as with its existence, the court should direct a verdict for defendant."

VIII. Express malice or malice in fact is necessary or essential to warrant recovery if the matter is qualifiedly privileged. 53 C. J. S., section 100, page 158; Ryan v. Wilson, 231 Iowa 33, 51, 300 N.W. 707. There are circumstances in which malice should not be imputed. However, where a communication is actuated by express or actual malice, it loses its character as privileged and is actionable. 33 Am. Jur., section 113, page 115; Hollenbeck v. Ristine, 105 Iowa 488, 492, 75 N.W. 355, 67 Am. St. Rep. 306. In the instant case the appellant, in Division VI, alleged:

"That by such statements, defendant maliciously intended to charge that the plaintiff had been guilty of arson and murder, and it was understood by the public and community in general as so intending and charging. * * * Plaintiff further alleges that said assertions and spoken words were wanton and made with actual malice toward the plaintiff * * *."

As previously set forth, the appellant's petition, in Division IV, states: "You know that Gracie Lee Robinson did set the fire and burned up her husband, and I am sure you want to tell the jury about the same." Attention is called to the fact that in the division now under consideration it is pleaded that the statement was made for the express purpose of injuring the appellant. This allegation, along with the statement itself, can be considered as a sufficient pleading of express malice.

IX. It should be kept in mind that the statement pleaded in Division IV of appellant's petition was made to Davis in the presence of "other parties unknown to plaintiff." It has been suggested that because of this pleaded fact the privilege claimed was lost. It has been held that where the relations between the parties are such as to make the occasion one of qualified privilege, the mere fact that the communication is incidentally brought to the attention of others than those for whom complaint is made, does

not destroy the privilege. 53 C. J. S., section 97b(1), page 155; Kroger Grocery & Baking Co. v. Yount, 8 Cir., Mo., 66 F.2d 700, 92 A. L. R. 1166, 1172; see also annotations 92 A. L. R., pages 1174–1176.

Despite the authorities previously set forth in this division of the opinion, we believe that the privileged character claimed for this statement cannot be sustained. In 3 Restatement of the Law of Torts, section 604, pages 269, 270, it is stated:

"One who, upon an occasion conditionally privileged for the publication of false and defamatory matter to a particular person or persons, knowingly publishes such matter to a person to whom its publication is not otherwise privileged thereby abuses the privilege unless he reasonably believes that such publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged."

And in the comments concerning this section it is set out that ordinarily a privileged occasion is abused by speaking defamatory words in the presence of persons whose knowledge of them is unnecessary to the protection of the interest in question. In the present case we are concerned only with what is pleaded. Under the situation as set forth in the pleadings, we believe that there is a showing that the attorney went beyond the cloak of his privilege and that the appellant so alleged.

X. In connection with our consideration of the ruling on the motion to dismiss Division V of appellant's petition, it is necessary to have in mind the statements made therein. It will be recalled that it is pleaded that the attorney for the appellant went to the office of an adjustment company, which, it is stated, was the agent and representative of the appellee; that his visit was to endeavor to make a settlement by reason of appellant's policy of insurance which she had with the appellee company. It was on this occasion that the representative of the adjustment company is alleged to have made the statement of which complaint is made.

Under the circumstances we believe that the statements made to the attorney were privileged, that they were not, in fact, published, and the pleaded facts cannot be held actionable as defaming the appellant. In the case of Freeman v. Dayton Scale Co., 159 Tenn. 413, 416, 417, 19 S.W.2d 255, 256, we find a situation

where the plaintiff in a libel action had previously brought suit for an alleged balance due him. The plaintiff's attorney in that action had written to the defendant setting out the fact that his client had this claim, and a letter in reply written by an agent of the defendant corporation is alleged to have contained libelous statements. A demurrer was filed which raised the question of publication except to the attorney for the plaintiff. It was therein stated: ·

"The weight of the more recent authorities, supported, we think, by reason, is against liability in such a case, upon the ground both that such a communication is privileged, and also that there is no publication in the required sense.

"This view seems to rest partly on the theory that the attorney is the chosen agent of the party libeled, selected by him to stand in his stead, and to receive on his behalf any such communication as may pass between the parties to the controversy; and partly on the theory that a communication addressed to a third party, procured to be so addressed by the party libeled, does not amount to a publication. * * *

"In Dickinson v. Hathaway, 122 La. 644, 48 So. 136, 21 L. R. A. (N. S.) 33, dealing with correspondence with attorneys for the plaintiff, among other things, the court said: 'We have gone a step further and considered the relation of attorneys to their client. They represented the plaintiff. Instead of writing himself, he left it to his·attorneys. The answer to the attorneys related exclusively to their demand. It was the same as if the letter had been addressed to the plaintiff. It was, therefore, privileged.' * * *

"In 17 R. C. L. 320, it is said to be 'generally held that the publication of a libel or slander invited or procured by the plaintiff is not sufficient to support an action for defamation,' * * *."

Another case which bears upon the question whether there was a publication of the claimed slanderous statements is that of Wells v. Belstrat Hotel Corp., 212 App. Div. 366, 368, 208 N. Y. S. 625, 626, 627. In that case the attorney representing the plaintiff had written a letter of inquiry to the defendant corporation relative to certain actions taken towards the plaintiff. In an answer to his letter it is claimed that certain libelous statements were made. In commenting upon this situation, the court stated:

"A greater obstacle, however, in the way of sustaining plaintiff's second cause of action, arises from the fact that there was no publication of the matter justifying a recovery of damages by the plaintiff. An action for damages for libel can only be maintained where it appears that the offensive writing was published by the defendant of and concerning the plaintiff, and, unless such offensive matter was communicated to some third person, plaintiff was not injured thereby. Youmans v. Smith, 153 N. Y. 214, 218, 47 N.E. 265."

Other cases which support this same holding are: Wrought Iron Range Co. v. Boltz, 123 Miss. 550, 86 So. 354, 355; Richardson v. Gunby, 88 Kan. 47, 127 P. 533, 536, 42 L. R. A., N. S., 520; Melcher v. Beeler, 48 Colo. 233, 110 P. 181, 186, 187, 139 Am. St. Rep. 273; Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 251, 146 A. L. R. 732.

We find and hold that the action of the trial court in sustaining the motion to dismiss Division V of appellant's petition was justified under the pleaded facts and the authorities cited.

For the reasons previously stated we hold that the motion to dismiss Division IV of appellant's petition should have been overruled and that the sustaining of the motion to dismiss Division V was proper.—Affirmed in part and reversed in part.

BLISS, MANTZ, GARFIELD, HAYS, and THOMPSON, JJ., concur.